September 19, 2011

FILED

SEP 2 0 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
501 I Street
Sacramento, California   95814-2322


BOBBY N. JACOBSON

    Plaintiff

    v.

DEPARTMENT OF THE ARMY
BOARD FOR THE CORRECTION
OF MILITARY RECORDS

    Defendant

2:11 CV 2493 MCE GGH (PS)


    I was injured during the Korean war by shrapnel from an enemy mortar round explosion.  My battalion field doctor examined me, but left unrecorded shrapnel in my chest wall when he failed to detect and treat my injury.

    When I applied to the Army Board For The Correction Of Military Records for the Purple Heart medal and an upgraded Honorable Discharge, my applications were illegally denied.

    The V.A. and hospital reports I presented to the ABCMR show shrapnel still in my chest wall, but the ABCMR stated in their (AR20080014307) denial that:  "There is no evidence that the shrapnel wound in question was received as a result of enemy action.  As a result, this factor alone is not sufficiently mitigating to support a discharge upgrade at this late date".

    When I sued the ABCMR for the Purple Heart medal, (Case No. CIV S-08-1828 GGH PS, (Item 1), I found and submitted evidence into the lawsuit that the ABCMR had been withholding from me.  That evidence, (Item 2), of my Army court martial testimony transcript, was accepted by the judge.  It showed that my testimony of being wounded made the connection between the shrapnel in my chest wall and the Korean war.

The ABCMR won summary judgment in my case, even though the judge stated on page 10, line 16 of his ruling, "Because plaintiff was stationed in Korea during the time he was wounded, it can be inferred that the metal in his chest is shrapnel from the Korean war."

The court ruling establishes that my DD 214 was improperly issued because it does not list my combat injury. The ruling also shows that the ABCMR acted in bad faith by not correcting my record when they knew of the court ruling and of my Army record confirming my injury. The 14th constitutional amendment, and Article 6, Clause 2 of the U.S. Constitution, bind the ABCMR to the court ruling that I was wounded in combat by a hostile force, and requires them to correct my record accordingly.

(1.)   AR600-8-22 required my battalion field doctor to detect, treat, and document my combat injury. His failure to do so is evidenced by the shrapnel in my chest wall, the notation of my injury in my Army record, and the court ruling that the metal in my chest is shrapnel from the Korean war.

(2.)   I meet the requirements of AR600-8-22, 38 C.F.R. 3.307, and U.S.C 1154 (b) as a combat injured soldier. My only duty to AR600-8-22 was to report my injury that required medical attention. The embedded shrapnel in my chest wall met that requirement.

(3.)   I gave my court martial testimony for the purpose of establishing my injury in my record. My testimony shows that I made a timely effort to get my record changed to indicate my injury. It also shows that the battalion doctor violated AR600-8-22 by not giving me the documented medical treatment that I required when I was wounded.

(4.)   The omission on my discharge DD 214 of a combat injury is a violation of AR15-185, AR615-360 par 7, AR615-375 par 2, and 38 U.S.C. 693h.

(5.)   The ABCMR knew, or should have known, that their stated reasons for denying my applications were wrong. They had the hospital and V.A. reports of shrapnel in my chest wall, the Army court martial testimony that connects the shrapnel in my chest to the Korean war, and the ruling of the Federal Court that I was wounded in the Korean war. But the ABCMR did not examine that evidence, or give a satisfactory explanation for their omission. (Kries v. Sec'y of the Air Force, 275 U.S. App. D.C. 390, 866, F. 2d, 1508, 1514, (D.C. Cir  1989)

(6.)   The ABCMR is entrusted with my records but failed to "Maintain all records which are used by the agency with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." (5 U.S.C. 552a)

(7.)   The Army failed to abide by AR615-360 par 7, that states that all pertinent factors be considered upon discharge so that the type of discharge will reflect accurately the nature of service rendered.

(8.)   38 U.S.C. 693h, requires the findings of the Army Review Board "shall be based on all available records of the Army relating to the person requesting such review"; the word "records" means records of the military service. My Army court testimony is an Army record of my military service that notes that I was injured in combat. It is a part of the administrative record that was in

existence during my proceedings with the ABCMR, but was illegally withheld from me. My testimonial evidence was, or should should have been, before the ABCMR when they reviewed my applications. Therefore, by not reviewing all of the available evidence, the findings of the ABCMR are not justified.

(9.)  The Board claim that my application for a discharge upgrade is 'late', is false. My discharge application relates to a combat injury that was not documented as required. Combat injuries are not time limited for correction, and correcting mine will require correcting my discharge as well.

(10.)  If my testimonial record had been revealed to me by the ABCMR, I would have included it in my applications and it would have prevented the Board from presuming government regularity.

(11.)  The ABCMR is bound by their own rules, and is required to decide cases on the evidence of record, (10 U.S.C. dodd/7050), and (AR15-185, ch. 2, sec. 1, 2-2 c). My Army court testimony is evidence of record that was never reviewed by the ABCMR. The court ruling affirming my combat injury is also evidence of record that has not been reviewed by the ABCMR.

(12.)  The evidence that the ABCMR withheld from me establishes that the Army discharged me without recording my combat injury on my DD 214, in violation of (AR615-360 par 7, and AR615-375 par 2)  Such a discharge is illegal and will be invalidated:  (Service v. Dulles, 354 U. S. 363, 77 S. ct. 1152 1 L. Ed 1403 (1957

(13.)  The ABCMR obstructed justice and disregarded the truth when they omitted evidence of record and denied my applications without considering all of the available evidence. (Caddington v,U.S. 178 F. Supp. 604, 147 Ct. Cl. 629 1959, (Yee v. U.S., 512 F. 2d 1383, 1387 Ct. Cl. 1975)


(14.)  The Board statement that:  "However,there is a properly constituted DD Form 214 on file that was authenticated by the applicant with his signature." is false.  I was incarcerated at the time I signed my discharge certificate. The discharge officer told me that I had no benefits coming and that I would be returned to the stockade if I did not sign. Therefore my signature was coerced, and is invalid, and does not authenticate that I was not injured in combat, or that my discharge is legal. My DD 214 is stigmatizing, and does not give a true account of my service. (Title 10 U.S. C. 1219) would prohibit the Army from using my coerced signature to authenticate my DD 214 that does not list my combat injury.

(15.)  I meet the requirements of U.S.C 1154 (b), C.F.R. 3.303, and 3.304, for service connection for my injury.

(16.)  I was totally dependant on officials to act on my behalf and they failed to do so.  My company commander, platoon and squad leaders were killed or wounded.  Other officials were told of my injury but failed to act in my behalf. The ABCMR had the opportunity to ameliorate that injustice by issuing me the Purple Heart medal and an upgraded discharge.

(17.)  I will accept a general discharge under AR635-200 (13-31).  Such a discharge would have been considered if the discharge officer had had access to my true Army record.  That type discharge was warranted by my combat injury and other particular circumstances it describes.  If

there is any doubt that I qualify for the regulation, it must by ruled in my favor.  (AR635-200) and ( 38 C.F.R.  3.102)

(18.)  I ask the court to rule that I was denied the due process of law, regulation and equal protection guaranteed me by the 5th and 14th amendments when the Army doctor denied me documented medical treatment for my combat injury.  I ask the court to rule that my discharge is illegal because it does not indicate my combat injury.  And, I ask the court to rule that the ABCMR acted arbitrarily, capriciously, and unlawfully in denying my applications for the Purple Heart medal and a corrected honorable discharge.

Bobby N. Jacobson, Pro se
P.O. Box 48
Penryn, Ca.  95663
Cell: 916-622-5245

1

2

3

4

5

6

7                      IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9    BOBBY N. JACOBSON,

10              Plaintiff,                    No. CIV S-08-1828 GGH PS

11        vs.

12   DEPARTMENT OF THE ARMY                          ORDER[1]
     BOARD FOR CORRECTION OF
13   MILITARY RECORDS,

14              Defendant.

15   _____/

16        Previously pending on this court's law and motion calendar for May 14, 2009,

17   was defendant's motion for summary judgment, filed April 6, 2009.  Plaintiff appeared in pro se.

18   Defendant was represented by Bobbie Montoya.  Having reviewed the filings in support and in

19   opposition to the motion, and having heard oral argument, the court now issues the following

20   findings and recommendations.

21   BACKGROUND

22        Plaintiff, who is 78 years of age, seeks an order of this court directing the U.S.

23   Department of the Army, Board for Correction of Military Records ("ABCMR"), to issue him a

24   "Purple Heart" based on plaintiff's 1950 Army service in the Korean War during which plaintiff

25   _____

26        [1]  The case proceeds before the undersigned pursuant to the consent procedures of 28
     U.S.C. § 636(c).

                                            1

1  allegedly sustained shrapnel wounds to his back and chest wall while engaged in hostile action.[2]

2          Plaintiff enlisted in the Regular Army on July 24, 1950 for a period of three years;

3  he was released from active duty on September 29, 1953 with an undesirable discharge.  Record

4  of Proceedings, Aug. 17, 2006, at p. 2.  Plaintiff describes the underlying facts as follows

5  (Complaint, at pp. 1-2):

6          I was a soldier during the Korean War.  In a firefight, a mortar round exploded
           behind me on the right side of my back.  I also took shrapnel in my leg that I
7        . pulled out by hand.  At first opportunity I went to the battalion and station and
           told the doctor there what had happened.  He gave my back a quick look and said
8          there was nothing wrong with me.

9          In 2003 I was in the Sutter Roseville, CA. Hospital for elective surgery and x-rays
           were taken that show shrapnel in my chest wall.  I obtained those x-rays, made
10         copies, and sent the copies, along with an explanation of what happened in Korea,
           to the ABCMR and asked it to change my records and issue me the Purple Heart
11         for the wound.  The Board has refused to do so and has forced me into the court
           . for justice.

12

13         Plaintiff has submitted the following documentation demonstrating compliance

14  with administrative procedures for obtaining the requested correction of his records:

15         1) January 11, 2008 x-ray report of plaintiff's abdomen by "Northern California
           HCS" (ordered by Dr. Michael Ashcraft), demonstrating in pertinent part a
16         "Metallic fragment identified near the right chest wall, adjacent to the right 7th
           rib, likely shrapnel;" confirmed "outside chest x-ray report" submitted by plaintiff
17         on July 12, 2007.

18         2) August 24, 2006 cover letter from ABCMR Director Carl Chun, and copy of
           the Board's August 17, 2006 Record of Proceedings, denying plaintiff's
19         December 26, 2005 application to be awarded the Purple Heart.  Director Chun

20
           [2] Plaintiff states in the Civil Cover Sheet that he is suing for personal injury based on
21  medical malpractice.  However, plaintiff does not seek damages, nor does he demonstrate
    exhaustion of administrative remedies under the Federal Tort Claims Act, for which the statute of
22  limitations is two years after the claim accrues, defined in medical malpractice actions as the date
    upon which plaintiff knows of both the existence of an injury and its cause, although not
23  necessarily the government's negligence.  See, e.g., Hensely v. U.S., 531 F.3d 1052, 1056 (9th
    Cir. 2008).  Here plaintiff was alerted to the metallic fragment in his right chest wall pursuant to
24  x-rays taken June 16, 2003.  Plaintiff does not aver that he filed any claim under the FTCA,
    which would have been subject to a June 16, 2005 deadline.  Accordingly, absent the submission
25  of evidence enlarging the scope of this action, it is limited to plaintiff's appeal of ABCMR's
    decision denying plaintiff's request for a Purple Heart, and does not include a claim for personal
26  injury or medical malpractice.

1    informed plaintiff that the Board has nonetheless identified an administrative error
     in plaintiff's records that would be corrected, viz., that plaintiff had met the
2    criteria for, and his records would be corrected to show, an award of the Korean
     War Service Medal.  The Board's Record of Proceedings demonstrates it
3    conducted a substantive review[3] of plaintiff's reconstructed military record[4] and
     concluded it did not "demonstrate the existence of a probable error or injustice."
4    Record of Proceedings, Aug. 17, 2006, at p. 5.  The Board reasoned, "Evidence
     did not contain any general orders which awarded the applicant the Purple Heart.
5    There were no Army medical records available which show the applicant was
     wounded or treated for wounds as a result of hostile action during his service in
6    Korea.  In the absence of such evidence, there is insufficient basis for award of the
     Purple Heart in this case."  Id., at p. 4.
7
     3)  June 19, 2007 letter from plaintiff to the Board challenging its August 2006
8    decision.

9    4) September 20, 2007 cover letter from ABCMR Director Catherine C. Mitrano,
     and copy of the Board's September 13, 2007 Record of Proceedings, denying
10   plaintiff's request for reconsideration despite submission of additional evidence
     including an "article from the United States Army in the Korean War," a
11   "morning report," and additional medical records.[5]

12   _____

13       [3]   The Board initially stated that the purpose of its substantive review was "to determine if
     it would be in the interest of justice to excuse the applicant' failure to timely file" for correction
14   of his military records, normally required within three years after discovery of the alleged error or
     injustice (citing 10 U.S.C. § 1552(b)).  After concluding that plaintiff should have discovered the
15   alleged error or injustice on or before September 29, 1953 (concluding the three statute of
     limitations for seeking correction of military records, 10 U.S.C. § 1552(b))), the Board
16   nonetheless found that *"it is appropriate to waive failure to timely file in this case based on the
     fact there is no statute of limitations on requests for award of the Purple Heart."*  Record of
17   Proceedings, Aug. 17, 2006, at p. 2, 4-5 (emphasis added).

18       [4]   The Board noted that "The applicant's military records [were] not available for review.
     A fire destroyed approximately 18 million service members' records at the National Personnel
19   Records Center in 1973.  It is believed that the applicant's records were lost or destroyed in that
     fire.  However, there were sufficient documents remaining in a reconstructed record to conduct a
20   fair and impartial review of this case."  Record of Proceedings, Aug. 17, 2006, at p. 2.

21       [5]   Plaintiff has also submitted the following: A September 19, 2007 cover letter from
     ABCMR Director Catherine C. Mitrano, and copy of the Board's September 13, 2007 Record of
22   Proceedings, denying plaintiff's application to upgrade his undesirable discharge.  The Record of
     Proceedings recounts plaintiff's rationale for the application (id., at p. 2): "The applicant states,
23   in effect, that he was unjustly given an undesirable discharge because no consideration was given
     concerning his untreated combat wounds, depression, anxiety or Post-Traumatic Stress Disorder
24   (PTSD).  He states that he never received legal counseling or any other form of counseling prior
     to his discharge.  He states he should have received an honorable or medical discharge."  While
25   acknowledging that plaintiff's military record lacks pertinent information, because of the
     destruction of such records in 1973 (see n. 3), the Board found that plaintiff had failed to make
26   any showing that would undermine institutional deference to the judgment of plaintiff's
     commander at the time he discharged plaintiff.  Plaintiff does not reference this matter in his

                                              3

1   DISCUSSION

2      I. SUMMARY JUDGMENT STANDARDS UNDER RULE 56

3       Summary judgment is appropriate when it is demonstrated that there exists "no

4   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

5   matter of law." Fed. R. Civ. P. 56(c).

6        Under summary judgment practice, the moving party
       always bears the initial responsibility of informing the district court

7        of the basis for its motion, and identifying those portions of "the
       pleadings, depositions, answers to interrogatories, and admissions

8        on file, together with the affidavits, if any," which it believes
       demonstrate the absence of a genuine issue of material fact.

9

10   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

11   P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

12   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

13   depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment

14   should be entered, after adequate time for discovery and upon motion, against a party who fails to

15   make a showing sufficient to establish the existence of an element essential to that party's case,

16   and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552.

17   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

18   necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment

19   should be granted, "so long as whatever is before the district court demonstrates that the standard

20   for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

21   2553.

22       If the moving party meets its initial responsibility, the burden then shifts to the

23   opposing party to establish that a genuine issue as to any material fact actually does exist. See

24   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

25

26   complaint and therefore any attempt to challenge this Board decision is not before this court.

1  (1986). In attempting to establish the existence of this factual dispute, the opposing party may

2  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

3  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

4  contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

5  106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is

6  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

7  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

8  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

9  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

10  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).[6]

11      II. STANDARDS OF REVIEW FOR CORRECTION OF MILITARY RECORDS

12         Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702,[7] federal

13

14      [6] In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed

15  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

16  trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

17

18      [7] 5 U.S.C. § 702 provides in full:

19      A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

20  judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or

21  employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground

22  that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a

23  judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by

24  name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the

25  power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any

26  other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

1  courts have subject matter jurisdiction to review decisions of the Army Board for Correction of

2  Military Records.  See Guerrero v. Stone, 970 F.2d 626, 628 (9th Cir. 1992) (finding subject

3  matter jurisdiction to review decisions of the ABCMR pursuant to § 702, which "waives

4  sovereign immunity for equitable actions brought pursuant to 28 U.S.C. § 1331 [federal question

5  jurisdiction]").[8]  After noting the statutory authority accorded boards for correction of military

6  records,[9] the Guerrero court identified the standard for judicially reviewing the decisions of the

7  various boards (ibid.):

8  > The Supreme Court has stated, "Board [for Correction of Military Records]
>   decisions are subject to judicial review and can be set aside if they are arbitrary,
9  > capricious, or not based on substantial evidence." Chappell v. Wallace, 462 U.S.
>   296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983).  Moreover, as stated in
10 > Secretary of Navy v. Huff, 444 U.S. 453, 458, n. 5, 100 S.Ct. 606, 609, n. 5, 62
>   L.Ed.2d 607 (1980), "the federal courts are open to assure that, in applying
11 > [military] regulations, commanders do not abuse the discretion necessarily vested
>   in them." See also Sanders v. United States, 594 F.2d 804, 811, 219 Ct.Cl. 285
12 > (1979) ("Once a plaintiff has sought relief from the Correction Board, such
>   plaintiff is bound by that board's determination unless he can meet the difficult
13 > standard of proof that the Correction Board's decision was illegal because it was
>   arbitrary, or capricious...."). We are persuaded by the reasoning in Neal v.
14 > Secretary of Navy, 639 F.2d at 1037 (applying this standard in review of decisions
>   of Enlisted Performance Board and Board for Correction of Naval Records); see
15 > also Ballenger v. Marsh, 708 F.2d 349, 350 (8th Cir.1983) ("Board decisions
>   denying 'corrective' action are reviewable by federal courts") (citing cases).

16

17      As stated by another court (Cooper v. United States, 203 Ct. Cl. 300, 304-05

18  (1973), and quoted with approval, Grieg v. U. S., 640 F.2d 1261, 1268 (Ct. Cl. 1981)):

19  \\\\\

20  _____

21      [8] "[T]he Army Board for Correction of Military Records is an 'agency' within the
    meaning of the APA, inasmuch as "agency" is defined to include 'each authority of the
22  Government.' 5 U.S.C. § 701(b)(1).  The only exceptions applicable to the military are those for
    'military authority exercised in the field in time of war or in occupied territory,' id. §
23  701(b)(1)(G), and 'courts martial and military commissions,' id. § 701(b)(1)(F), neither of which
    applies here." Guerrero, 970 F.2d at 628.

24      [9] 10 U.S.C. § 1552(a)(1) provides in pertinent part: "The Secretary of a military
    department may correct any military record of the Secretary's department when the Secretary
25  considers it necessary to correct an error or remove an injustice.  Except as provided in paragraph
    (2) [not relevant here], such corrections shall be made by the Secretary acting through boards of
26  civilians of the executive part of that military department."

1   [This court cannot overturn the] decisions of the Army Board for the Correction of
2   Military Records unless they are found to be arbitrary, capricious, and not based
    upon substantial evidence, or are contrary to applicable laws and regulations.
3   Dorl v. United States, 200 Ct. Cl. 626, cert. denied, 414 U.S. 1032 (94 S. Ct. 461,
    38 L. Ed. 2d 323) (1973).  This showing requires cogent and clearly convincing
4   evidence. Newman v. United States, 185 Ct. Cl. 269, 276 (1968); Stephens v.
    United States, 174 Ct. Cl. 365, 372, 358 F.2d 951, 954 (1966). There is a strong
5   presumption that the board and the Secretary faithfully discharged their duties and
    the burden is upon plaintiff to prove otherwise. Callan v. United States, 196 Ct.
6   Cl. 392, 450 F.2d 1121 (1971); Biddle v. United States, 186 Ct. Cl. 87 (1968).

7        "[J]udicial review of a military corrections board decision 'does not require a

8   reweighing of the evidence, but rather a simple determination that a reasonable mind could

9   support the challenged conclusion.'" Browder v. United States, 79 Fed. Cl. 178, 181 (2007),

10  quoting Donahue v. United States, 33 Fed.Cl. 507, 510 (1995).

11      III. ANALYSIS

12          A. Purple Heart

13          At hearing, plaintiff was able to describe some of the circumstances surrounding

14  his injury for which he seeks the Purple Heart.  In no uncertain terms, the battle was horrible with

15  much physical devastation.  The doctor in the field was so busy with casualties and wounded,

16  there is little doubt that he had no time to create medical records of the wounded.  Plaintiff's

17  recollection is that when he was hit with shrapnel, he lifted his shirt for the doctor who told him,

18  "there's nothing wrong with you."  Certainly, plaintiff may have been injured; however, in

19  relative terms, the doctor may have had his hands literally filled with more serious life and death

20  injuries.  Nevertheless, the court finds that the ABCMR's decision not to award the Purple Heart

21  was not arbitrary, capricious or contrary to law.

22          The Board describes the following requirements for receiving a Purple Heart:

23          Each approved award of the Purple Heart must exhibit all of the
            following factors:  wound, injury or death must have been the
24          result of enemy or hostile act; international terrorist attack; or
            friendly fire...[;] the wound or injury must have required treatment
25          by medical officials; and the records of medical treatment must
            have been made a matter of official Army records.

26

7

1 | Army Reg. 600-8-22 ¶ 2-8k(3); (Def.'s App. 3.)

2 |        The evidence presented by plaintiff to the ABCMR consisted of x-rays and a

3 | diagnostic imaging report ("DIR"), dated June, 2003, which revealed a metallic foreign body in

4 | his chest wall. (AR 40.)  In his request for reconsideration, plaintiff submitted the same DIR,

5 | with a typed addendum by Dr. Hofer, stating, "The 5 mm metallic fragment within soft tissue of

6 | the right lateral chest wall on further review is consistent with shrapnel presumably related to old

7 | wound." (AR 26.)  Plaintiff also submitted a letter stating that he sustained combat injuries in

8 | the form of a mortar round which exploded behind him, during the Korean War in September,

9 | 1950.  He states that a medic crawled over to him, gave him "a shot, and made out a tag." (AR

10 | 35.)  Other documents were not directly pertinent to plaintiff's claim; however, he did submit a

11 | Morning Report, dated September 22, 1950, indicating plaintiff's duty status changed from

12 | "duty" to "absent, sick in hospital."[10]  On reconsideration, the ABCMR rejected this evidence.

13 | AR 2-5.  It noted that the newly submitted article did not reference plaintiff's claims of injury by

14 | shrapnel.  The morning report, although describing plaintiff as in hospital, did not note that he

15 | was in hospital due to a wound sustained in combat.  The DIR with its newly added addendum

16 | did not state that the metal consistent with shrapnel was due to an enemy mortar round in the

17 | Korean War (although a doctor's report years after the fact would be hard pressed to have such

18 | specific knowledge).

19 |        With his opposition, plaintiff presents evidence which defendant asserts was never

20 | provided to the ABCMR.  Included is a Morning Report, dated September 16, 1950, which

21 | includes plaintiff's name but does not include his status or any personnel change. (Pl.'s Oppo. at

22 | 4.)  Plaintiff has also submitted what is apparently a copy of his 1951 court martial conviction, in

23 | which plaintiff's testimony of being wounded in "the latter part of August 1950 or 1 September

24 | 1950" is referenced. (Id. at 8.)  Plaintiff has also attached two news articles which recount the

25 | 

26 |    [10] Another Morning Report, dated September 23, 1950, contains his name.  The remainder of the report is unreadable due to poor copy quality. (AR 17.)

1    Battle of Unsan in November, 1950, and concludes that the 8th Cavalry lost more than 600

2    soldiers during this battle.  (Id. at 9, 10.)  Plaintiff argues that this article pertains to his regiment

3    and its destruction.

4              The problem inherent in this case is the lack of record retention.  The article in the

5    Administrative Record entitled, "South to the Naktong, North to the Yalu," written by an Army

6    combat historian sent to Korea during that war to prepare the Army's history of the war, (AR 13),

7    describes the record keeping situation:

8                   Official records are indispensable for fixing dates and time
                     of major events and troop movements.  But anyone familiar with
9                   the way the records of combat units during battle are made up will
                     know that they seldom tell the essential facts of what happened,
10                  and how, and why.  They are often the products of indifferent
                     clerks transcribing, [] places remote from the scene of action, a
11                  minimum of messages for something-anything-that will satisfy the
                     official requirement for a report.  Those who know the most about
12                  an action or an event seldom take the time to tell, or write about it.
                     They are too tired, or too nearly dead, or they are dead.
13                      In the *early months* of the Korean War there was little time
                     for the military organizations committed there to keep adequate
14                  records of what they did, even had there been the desire to do so.

15   (AR 15.) (emphasis added.)  This description would be particularly true of plaintiff's injury as it

16   allegedly occurred in August or September of 1950, some two to three months after the war

17   began in June, 1950.  (AR 13.)

18             The second problem with record unavailability in this case is the previously

19   referenced fire in 1973 which destroyed Army records of about 18 million service members,

20   including plaintiff.  These events and corresponding lack of evidence cannot be attributed to

21   plaintiff, and the evidence available will be considered with this background in mind.

22             Turning to the first element required for a Purple Heart, the evidence before the

23   ABCMR was that the metal fragment in plaintiff's chest wall is consistent with shrapnel,

24   according to a doctor who reviewed plaintiff's DIR in 2003.  Defendant reasonably argues that

25   the doctor's conclusion that it was presumably from enemy fire is speculative, in light of the

26   passage of over fifty years.  Defendant further points to DD Form 214, which contains an entry of

9

1   "none" for "wounds received as a result of action with enemy." (AR 30, 36.)  This form was

2   issued after plaintiff's discharge from the Army in 1953, and plaintiff never sought to correct this

3   entry.  Def.'s Mot. at 4.  Plaintiff's complaint is not verified, and his opposition contains no

4   declarations.  Although plaintiff has submitted evidence of his testimony at his 1951 court

5   martial, defendant claims that this evidence was not presented to the ABCMR and should not be

6   considered.  Nevertheless, the cover page of this report is a letter to plaintiff from the Department

7   of the Army, dated September 24, 2008, containing the certified copy of his court martial

8   conviction. (Pl.'s Oppo. at 8.)  Even if defendant did not receive this evidence from plaintiff

9   during the earlier review, defendant had access to its own records, of which this was one.

10   Defendant concedes that the ABCMR "scoured plaintiff's records," and having done so, it would

11   have come across this court martial conviction in which plaintiff testified.[11]

12              Furthermore, new evidence is permitted if it was unavailable below.  <u>Krzeminski</u>

13   <u>v. United States</u>, 13 Cl. Ct. 430, 437 (1987) *quoting* <u>Long v. United States</u>, 12 Cl.Ct. 174, 176,

14   177 n. 2 (1987).  Based on the Army's access to the court martial record relating to plaintiff, and

15   its previous unavailability to plaintiff, the record of plaintiff's court martial is accepted.

16   Plaintiff's testimony from 1951 is that he was wounded in August or September, 1950.  Because

17   plaintiff was stationed in Korea during the time he was wounded, it can be inferred that the metal

18   in his chest is shrapnel from the Korean War.  Even if the court martial conviction is not

19   considered because it was outside the administrative record, the remainder of the evidence leads

20   to the same conclusion in regard to this factor.

21              The second factor, that the wound or injury must have required treatment by

22   medical officials, is more difficult for plaintiff to establish.  The ABCMR record indicates two

23   hospital visits around the time period in question; however, both admissions were for other

24   reasons.  On March 14, 1951, plaintiff was admitted for an infection.  On June 9, 1951, plaintiff

25   _____

26   [11] Defendant refers to the 1973 fire which destroyed plaintiff's records; however, the
     court martial record was apparently not one of those files.  (AR 29; Pl.'s Oppo. at 7.)

1   was admitted for a "contusion to his buttocks, hip, and leg." (AR 30.)   At hearing, plaintiff

2   referred to another hospital visit on September 22, 1950, due to being hit by a bunker, wherein

3   logs and dirt fell on his legs, almost breaking them.  The Morning Report submitted and

4   referenced *supra*, apparently relates to this incident, which occurred about three to four weeks

5   after his alleged injury by enemy fire.  Plaintiff could not point to any other hospital admission

6   for his chest wound; however, he did explain the circumstances surrounding his chest injury.  His

7   regiment was in a heated battle in which soldiers all around him were getting killed by the

8   enemy.  He lifted his shirt to show the doctor his wound, and the doctor responded by saying

9   there was nothing wrong with him.  Plaintiff argues that he had to concentrate on staying alive

10   during this battle instead of getting needed medical attention.  He states that he did all he could in

11   this regard, and that it is not his fault that the Army did not treat his wound or record it.

12           Whether or not plaintiff was refused treatment, as he now contends, is not the

13   issue.  Assuming that plaintiff was denied treatment, the fact of the matter is that he continued

14   serving actively in the war on the battlefield for some period of time.  His active service without

15   receiving any medical treatment for his wound works against him as it establishes that his wound

16   was not significant enough to *require* treatment.  He also did not suffer complications of this

17   wound as he concedes that he did not file a claim until he was made aware of his 2003 diagnostic

18   imaging results which indicated the metal fragment in his chest wall.

19           Plaintiff's failure of proof for the second factor almost certainly results in a failure

20   of the third factor, that the records of medical treatment must have been made a matter of official

21   Army records.  None of the evidence submitted indicates that plaintiff received medical treatment

22   that was documented in official military records during the time period in question.

23           Based on plaintiff's failure of proof, he cannot show that the Army's decision was

24   arbitrary or capricious, not based on substantial evidence, or contrary to law.  Plaintiff has failed

25   to make such a showing by "cogent and clearly convincing evidence."  Dorl v. United States, 200

26   Ct. Cl. 626, *cert. denied*, 414 U.S. 1032 (94 S. Ct. 461, 38 L. Ed. 2d 323) (1973).  The court

11

1   cannot find that the ABCMR exhibited any clear error of judgment or did not consider the

2   relevant factors. Arizona Cattle Growers' Ass'n v. U.S. Fish and Wildlife, 273 F.3d 1229, 1236

3   (9th Cir. 2001).   This court is not permitted to "serve as a super correction board that reweighs

4   the evidence." Schaefer v. Geren, 607 F.Supp.2d 61, 68 (D.D.C. 2009).[12]

5           The court is sympathetic to plaintiff's argument that it is not his job to treat and

6   record his wound; however, in relative terms, the wound was not one that required treatment in

7   comparison to other wounds and casualties occurring in the heat of battle.

8           B.  Plaintiff's Other Claims

9           In his opposition, plaintiff claims that the ABCMR unlawfully denied him an

10  upgraded discharge. (Oppo. at 2.) This claim was not raised in the complaint, and defendant

11  represents that although plaintiff did apply for an upgrade, it was denied, and denied on

12  reconsideration on November 25, 2008, more than three months after plaintiff filed the instant

13  action. Therefore, this claim will not be considered.

14          Plaintiff also claims that the same board members who denied his request for

15  reconsideration in regard to the Purple Heart also denied his request to change his discharge from

16  undesirable to honorable or medical.  He explains that in ruling that plaintiff had not proved he

17  was wounded in combat, the Board "destroyed it[]s chance of giving me a fair and impartial

18  decision with my discharge application." (Oppo. at 2.)  The basis for his discharge upgrade

19  application was that the decision to discharge him dishonorably was without due process because

20  the Army did not know of his wound.  Plaintiff has presented absolutely no evidence in support

21  of this claim.

22  \\\\\

23

---

24  [12] Plaintiff's submission of a case at hearing is distinguishable in that it concerned
    administrative review by the Board of Veterans' Appeals following a Board remand.  The
25  standard of review in this court does not permit consideration of new evidence such as that
    submitted to the Board there, except as explained *supra*.  See Krzeminski, 13 Cl. Ct. at 437
26  (permitting new evidence only where it was unavailable below or plaintiff establishes bad faith or
    improper behavior).

1    Likewise, plaintiff's claim that the use of Army Regulation 600-8-22 against him

2 is discriminatory and violates his contract with the Army and his right to equal protection and

3 justice, is not supported by any evidence.

4 CONCLUSION

5    Accordingly, good cause appearing, IT IS HEREBY ORDERED that defendant's

6 motion for summary judgment filed April 6, 2009, is granted and judgment is entered in favor of

7 defendant.

8 DATED:   09/29/09                          /s/ Gregory G. Hollows

9                                            _____
                                             GREGORY G. HOLLOWS
                                             U. S. MAGISTRATE JUDGE
10 GGH:076/Jacobson1828.msj.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1            Likewise, plaintiff's claim that the use of Army Regulation 600-8-22 against him

2 is discriminatory and violates his contract with the Army and his right to equal protection and

3 justice, is not supported by any evidence.

4 CONCLUSION

5            Accordingly, good cause appearing, IT IS HEREBY ORDERED that defendant's

6 motion for summary judgment filed April 6, 2009, is granted and judgment is entered in favor of

7 defendant.

8 DATED:  09/29/09                    /s/ Gregory G. Hollows

9                                GREGORY G. HOLLOWS
                               U. S. MAGISTRATE JUDGE

10 GGH:076/Jacobson1828.msj.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13

After announcement of the findings, Lieutenant Colonel George S. Parrish, Commander of the 2d Battalion, 8th Cavalry Regiment, appeared as a witness in mitigation and stated that he had known accused for about two months and one week" (R 26). In the opinion of Lieutenant Colonel Parrish, accused "has a potential to do the service some good." Accused is a willing worker and had engaged in several combat patrols since 28 January 1951; he had volunteered to go on patrols and had been under fire. Accused presently is acting as squad leader in the I & R platoon and was going to understudy the operations sergeant and company first sergeant. Accused is "a remarkable soldier" and had been recommended for the bronze star. Lieutenant Colonel Parrish had recommended that the court-martial charges be dropped (R 27).

Affidavits of Master Sergeant Ellsworth Babcock and of Master Sergeant Albert G. Horton were to the effect that accused's conduct during the period 29 January 1591 to 14 March 1951 and "since his return to duty 8 June 1951" has been exemplary and efficient, that he was devoted to duty, held the respect of associates, and is of excellent character (Def Ex A, B; R 28).

Accused, having been advised by the law officer of his rights as a witness in mitigation, elected to testify under oath in substance as follows: He has been in Korea for eleven months and had engaged in hazardous missions prior to 26 December 1950 in the Pusan defense and the Taegu perimeter. He was wounded in the latter part of August 1950 or 1 September 1950. In the latter part of November he "went all the way up to the Chosin Reservoir." Since 28 January 1951 he had been armed with an M-1 rifle and had engaged in hazardous duty going out on I & R patrols; he had been under more small arms fire, than mortar fire. Accused, had prior service in the 11th Airborne Division and wants to remain in the service. (R 30-31).

4. DISCUSSION. a. Withdrawal of Court Member:

During examination by the court, Sergeant DeVoss was queried at length as to the tactical situation during the period in question including the following:

Q    Did you ever get runned out of your CP?

A    No sir.

COURT MEMBER: Then I might add, that we did a lot of fighting for nothing."

The law officer cautioned the court to disregard the member's statement. Later in the proceedings, defense counsel requested permission to ask Captain Miles, a member of the court, whether he had formed an opinion on the case based on outside knowledge. Prosecution objected to such procedure, and the law officer instructed the defense counsel that the proper procedure would be to have the member take the stand under oath. Defense declined to do so (R 17-18). Thereafter Captain Miles requested that he be excused because of knowledge of some of the incidents. The request was granted, whereupon he withdrew from the court room and took no further part in the proceedings (R 20).

Inasmuch as Captain Miles was excused from the proceedings prior to deliberation on the findings and sentence, it is unnecessary to decide whether the question propounded by defense counsel was proper. It is noted, however, that "it is optional with the questioning party whether the member being questioned shall be sworn to testify as to his competency before answering such preliminary questions" (MCM 1951, par. 62b, p 90). The law officer's cautionary instruction to disregard the statement made by the member of the court may be deemed to have corrected any error resultant from the member's action, thereby avoiding prejudice to the substantial rights of the accused.